**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Allina Health System,

Plaintiff,

v.

Minnesota Department of Human Services Commissioner John Connolly, *in his official capacity*; Carol Olson, *in her official capacity*; Dr. Paul Goering, *in his official capacity*; Dr. Prachi Striker, *in her official capacity*; Catherine Chavers, *in her official capacity*; John Dinsmore, *in his official capacity*; Mary Maertens, *in her official capacity*; Teresa Steinmetz, *in her official capacity*; Laurie Halverson, *in her official capacity*; Lynn Butcherson, *in her official capacity*; and Hennepin County,

Defendants.

Civil No. 26-4348 (DWF/SGE)

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on four motions: (1) Plaintiff Allina Health System's ("Allina") motion for an order to show cause and for civil contempt for failure to comply with a temporary restraining order ("TRO") (Doc. No. 9); (2) Defendants Minnesota Department of Human Services Commissioner John Connolly, Carol Olson, Dr. Paul Goering, Dr. Prachi Striker, Catherine Chavers, John Dinsmore, Mary Maertens, Teresa Steinmetz, Laurie Halverson, and Lynn Butcherson's (collectively, the "State Defendants") motion to dissolve or stay the TRO (Doc. No. 23); (3) Allina's motion for preliminary injunction seeking to extend the TRO (Doc. No. 35); and (4) Defendant

Hennepin County's motion to dissolve or stay the TRO (Doc. No. 51). All motions requested expedited handling. The Court held a hearing on the matter on October 23, 2026. Consistent with the Court's comments from the bench and for the reasons set forth below, the Court respectfully denies all motions.

## BACKGROUND

This litigation involves the care and custody of Jacob Wilson,[1] a young man with severe developmental disabilities. (Doc. No. 2 ¶ 26.) Wilson has been in the emergency department at Allina since September 26, 2026. (*Id.* ¶ 38.) The parties dispute where Wilson should be cared for and who should provide that care.

### I. Statutory and Regulatory Framework

Wilson receives Medicaid waiver services through Hennepin County. (Doc. No. 2 ¶ 26.) A brief overview of the statutory and regulatory framework of Medicaid waiver services is therefore necessary.

Minnesota's Medicaid program is administered jointly by the state and its counties. *See* Minn. Stat. § 256B.04, subdiv. 1 (2025). Medicaid waiver services allow for Medicaid payments for home and community-based services. *See* 42 C.F.R. §§ 441.300, 430.25 (2026). Counties are responsible for implementing disability-related waiver services and providing case management services "under the supervision of the

[1] "Jacob Wilson" is a pseudonym used by Allina to protect the man's identity. (Doc. No. 2 at 2.)

state agency and the commissioner of human services." Minn. Stat. § 256B.05, subdiv. 1 (2025); *see also id.* § 256B.092, subdiv. 1a.

Minnesota has state-operated treatment facilities for waiver recipients. The Direct Care and Treatment ("DCT") Executive Board operates these facilities. *See* Minn. Stat. § 246C.11 (2025). One division of DCT is the Community-Based Services ("CBS") division, which operates community residential services, or "group homes." *See id.*, subdiv. 4. The Minnesota Department of Human Services ("DHS") does not operate any residential locations or group homes for waiver recipients. (Doc. No. 29 ¶ 3.)

Typically, for a waiver recipient to be admitted to a CBS facility, county case managers make referrals to CBS. (Doc. No. 48 ¶ 3.) CBS then determines which program would best serve the needs of the individual and determines admission based on a statutory-imposed prioritization system. Minn. Stat. § 246C.11, subdiv. 4a(a) (2025). As of October 14, 2026, CBS group homes had a waiting list with 59 people on it. (Doc. No. 48 ¶ 5.) This inability to care for all waiver recipients in need is due, at least in part, to a shortage of direct care workers. (*Id.* ¶ 21.)

## II. Factual Background

Jacob Wilson has developmental disabilities which require significant care. (Doc. No. 2 ¶ 58; Doc. No. 54 ¶ 12.) He has previously received care in both private and CBS-run facilities. (Doc. No. 48 ¶¶ 8-11; Doc. No. 54 ¶ 14.) From June 2024 to August 2026, Wilson received community residential services from CBS at the Dakota Crisis Home in Burnsville, Minnesota. (Doc. No. 48 ¶ 11; Doc. No. 54 ¶ 16.) In December 2025, CBS began working to transition Wilson to a private long-term residential service facility in

Hastings, Minnesota owned by Mains'l. (Doc. No. 48 ¶ 14.) Wilson was moved to the Mains'l-owned home on August 17, 2026. (*Id.* ¶ 17.)

On September 26, 2026, Wilson overpowered two staff members, broke a window, and escaped from the home. (Doc. No. 2 ¶ 37.) He was then transported via ambulance to Allina's United Hospital Hastings Campus emergency department. (*Id.* ¶ 38.) An emergency department doctor, a mental health professional, and a psychiatrist evaluated Wilson and determined that his recent aggressive behavior was a manifestation of his developmental disability, not a mental health condition. (*Id.*) Wilson had a hand injury which required stitches, but no injury justifying in-patient admission. (*Id.*)

Allina attempted to discharge Wilson but cannot find a suitable place for him to go. Allina contacted the Mains'l group home, which initially indicated that they would take Wilson back after repairing the window and locks, but then informed Allina that they were unable to take Wilson back due to concerns for patient and community safety. (Doc. No. 2 ¶¶ 39-42, 44.)

Allina also contacted Defendants to coordinate waiver services. Hennepin County has made multiple referrals to community and private placements but has been unable to find a placement for Wilson. (*Id.* ¶¶ 42-43, 45; Doc. No. 54 ¶¶ 22-25.) The State Defendants reviewed Wilson's referrals and determined that the State does not currently have any appropriate openings available for him. (Doc. No. 2 ¶ 46; Doc. No. 48 ¶ 19.) However, CBS is actively pursuing two potential homes for Wilson which have recent openings. (Doc. No. 48 ¶ 19.) First, on October 5, 2026, a different resident moved out of the Dakota Crisis Home at which Wilson previously resided, creating a spot for

Wilson. (*Id.* ¶ 22.) But due to property damage that Wilson inflicted during his previous stay, construction is needed before he can move back in. (*Id.*) Construction began on October 12, 2026, and is anticipated to take upwards of eight weeks. (*Id.*; Doc. No. 15 ¶ 6.) CBS is exploring whether construction can be completed such that Wilson can move in even before all construction is completed. (Doc. No. 48 ¶ 22.) Additionally, CBS is collaborating with the Department of Labor to expedite permitting for repairs. (*Id.* ¶ 23.) Second, a home in Faribault, Minnesota, which CBS leases, was vacated. (*Id.* ¶ 24.) This home would also require construction to prepare the home for Wilson. (*Id.*) Construction on the Faribault home began on October 5, 2026, and may be completed before the Dakota home. (*Id.*) Moreover, both homes would require increased staffing to handle Wilson's needs. (*Id.* ¶¶ 20, 25.)

In the meantime, Wilson remains in Allina's care. Allina alleges that this poses a risk to their staff and property due to Wilson's violent and assaultive behaviors. (Doc. No. 2 ¶ 51.) For example, on October 2, 2026, Wilson took a bite "out of" a staff member's leg, causing serious injury. (*Id.*) These incidents have impacted staff attendance, causing emergency department employees to call in sick. (*Id.*) Allina is concerned that these incidents will continue to increase in severity and frequency the longer that Wilson stays in the hospital. (*Id.* ¶ 61.)

Due to the threat posed by Wilson and staffing consequences, Allina chose to put United Hastings on divert status, meaning that United Hastings would divert any ambulances to other emergency departments. (*Id.* ¶ 53.) To restore operations at United

Hastings and because the facilities can better house Wilson, Allina transferred him to United St. Paul on October 3, 2026. (*Id.* ¶ 54.) He remains there today, 28 days later.

## III. Procedural History

Allina brought this lawsuit against the State Defendants and Hennepin County on October 7, 2026, in Minnesota state court. *Allina Health Sys. v. Connolly*, No. 62-CV-26-7140 (Minn. Dist. Ct. Oct. 7, 2026). Defendant Connolly is sued in his official capacity as the DHS Commissioner. (Doc. No. 2 ¶ 2.) Defendants Carol Olson, Dr. Paul Goering, Dr. Prachi Striker, Catherine Chavers, John Dinsmore, Mary Maertens, Teresa Steinmetz, Laurie Halverson, and Lynn Butcherson are sued in their official capacity as members of the DCT Executive Board. (*Id.* ¶ 3.)

The same day, Allina filed an *ex parte* motion for a TRO requiring Defendants to take custody of Wilson and remove him from Allina's property. Notice of Ex Parte Motion and Ex Parte Motion, *Allina*, No. 62-CV-26-7140 (Minn. Dist. Ct. Oct. 7, 2026). On October 9, 2026, the state district court judge granted the motion and ordered that "Defendants . . . immediately take custody of [Wilson] and place him in an appropriate non-Allina setting." Order Granting Ex Parte Motion for Temporary Restraining Order, *Allina*, No. 62-CV-26-7140 (Minn. Dist. Ct. Oct. 9, 2026).

Also on October 9, 2026, State Defendants removed the action to federal court. (Doc. No. 1.)

On October 11, 2026, Allina filed a motion for order to show cause and for civil contempt. (Doc. No. 9.) Allina argues that Defendants refused to comply with the TRO

and request that the Court hold Defendants in contempt of the TRO and impose sanctions to compel compliance. (Doc. No. 10.)

On October 13, 2026, State Defendants filed a motion to dissolve or stay the TRO. (Doc. No. 23.) State Defendants argue that the TRO was improperly ordered and that it asks Defendants to take custody of Wilson without due process. (Doc. No. 25.) They therefore ask the Court to dissolve the TRO or stay the TRO's enforcement until the underlying legal questions can be answered. (*Id.*) On October 15, 2026, Hennepin County filed a very similar motion with very similar arguments. (Doc. No. 51.)

On October 14, 2026, Allina filed a motion for preliminary injunction. (Doc. No. 35.) Allina seeks to extend the TRO which would expire today, October 23, 2026.

## DISCUSSION

All parties agree that Wilson would be best served in a community placement with staff capable of providing advanced behavioral health care. And although all parties are collaborating on a proper placement for Wilson, no suitable facility is currently available. The question is who has the responsibility to care for Wilson while that location is prepared.

Each of the motions are interrelated. The Court begins with the motion for preliminary injunction, as that guides the outcome of the remaining motions.

### I. Motion for Preliminary Injunction

The Court considers four factors in determining whether to grant a preliminary injunction: (1) the threat of irreparable harm to the moving party; (2) the balance between this harm and the injury that granting the injunction would inflict on the

nonmoving party; (3) the moving party's likelihood of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The central question is whether justice requires preserving the status quo until the merits are determined. *Id.* If a court finds that the plaintiff is not likely to succeed on the merits, this "strongly suggests that preliminary injunctive relief should be denied." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009). A preliminary injunction is an "extraordinary remedy," and the moving party bears the burden of establishing the need for a preliminary injunction. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

The Court begins and ends with likelihood of success. Allina's requested relief would require State Defendants to circumvent the statutory-imposed system for assigning behavioral health beds. When, as here, a patient is not involuntary committed, Minnesota law requires consideration of clinical need and admission standards before admission to a treatment facility. *See* Minn. Stat. § 253B.04, subdiv. 1 (2025). Admission is inappropriate if a treatment facility does not have the capacity to care for a patient. (*See* Doc. No. 28 ¶ 5.) As explained in detail by State Defendants, there unfortunately is not a facility at which Wilson's admission would be appropriate. (*Id.* ¶¶ 8-15.) Further, each claim relies on the alleged taking of Allina's property without proper process. However, Defendants are not the direct reason that Wilson is at Allina. He was brought via ambulance, which was not directed by any Defendant. Without a strong showing on the merits, the extraordinary measure of a preliminary injunction is inappropriate. *CDI Energy Servs*, 567 F.3d at 402; *see also Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th

587, 593 (8th Cir. 2022) (noting that likelihood of success on the merits is the most important factor in the preliminary injunction analysis).

The Court realizes this leaves Allina in a difficult position. While the Court is currently satisfied by Defendants' assurances that they are actively working to find Wilson suitable housing, continued efforts are required. All Defendants are ordered to jointly submit weekly updates to the Court on the progress of renovations to the group homes, updates to the staffing capacity, and the expected timeline for when Wilson will be able to move into a facility suitable for his needs.

Notably, the Court does not take a position on the ultimate outcome of this case. It seems there is at least circumstantial evidence that the state and counties are using hospitals as a stopgap when there is no other placement. The Court will address those questions in the normal course.

## II. Other Motions

Having found that a preliminary injunction is not warranted, the results for the remaining motions are clear.

A motion for temporary restraining order is analyzed under the same framework as a motion for preliminary injunction. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). If a preliminary injunction is inappropriate, it follows that a TRO was inappropriate. However, because the TRO expires today and the Court has declined to issue an injunction, Defendants suffer no harm. The motions to dissolve the TRO are denied as moot.

Finally, because a TRO was not warranted, a finding of contempt is also not warranted. Additionally, Defendants have made every reasonable effort to find a suitable location for Wilson. Contempt is far too harsh a result in these circumstances. The motion for order to show cause is denied.

## CONCLUSION

Consistent with the Court's comments from the bench, the Court finds that neither a temporary restraining order nor a preliminary injunction is appropriate in this case. Given that the TRO expires today, the Court need not dissolve the TRO; the Court simply declines to extend the TRO. Defendants will suffer no prejudice as the motion for order to show cause was likewise denied.

An underlying issue is clear to the Court: Minnesota's behavioral healthcare capacity is inadequate to meet the demands of its citizens. It is frankly unacceptable that Minnesotans with behavioral health issues are stuck in limbo awaiting a proper place for care. As the adage goes, the true measure of our civilization is how we treat the most vulnerable members of society. There remains much work to do to properly care for Minnesotans with behavioral health needs. But the Court's hands are tied; the Court cannot create capacity where it does not exist. The Court hopes the Minnesota Legislature will address the issue. Until then, the Court expects and indeed demands that the parties work together to address Mr. Wilson's needs in a timely manner.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Plaintiff Allina Health System's motion for an order to show cause and for civil contempt for failure to comply with the TRO (Doc. No. [9]) is respectfully **DENIED**.

2. State Defendants' motion to dissolve or stay the TRO (Doc. No. [23]) is **DENIED AS MOOT**.

3. Plaintiff Allina Health System's motion for preliminary injunction (Doc. No. [35]) is respectfully **DENIED**.

4. Defendant Hennepin County's motion to dissolve or stay the TRO (Doc. No. [51]) is **DENIED AS MOOT**.

5. State Defendants and Hennepin County are directed to submit joint updates on the status of Mr. Wilson's case before 12:00 p.m. on Friday each week until appropriate housing is found.

Dated: October 23, 2026

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge